UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    :
SHIFRA GROSS, individually and on   :
behalf of a class,                  :
                Plaintiff,          :
                                    :
     v.                             :   **OPINION**
                                    :
                                    :   06 Civ. 4340 (RLC)
WASHINGTON MUTUAL, INC.,            :
WASHINGTON MUTUAL BANK; and         :
WASHINGTON MUTUAL BANK FSB          :
                                    :
                Defendants.         :
-----------------------------------X


APPEARANCES

Daniel A. Edelman
Edelman, Combs, Latturner & Goodwin, LLC
120 S. Lasalle Street, Suite 1800
Chicago, IL 60603

Lawrence Katz
Katz & Kleinman PLLC
626 EAB Plaza
Uniondale, NY 11556

Jeremy Patrick Monteiro
Edelman, Combs, Latturner & Goodwin, LLC
120 S. Lasalle Street, Suite 1800
Chicago, IL 60603

Francis Charles Healy
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038


ROBERT L. CARTER, District Judge

On June 8, 2006, plaintiff Shifra Gross filed a putative class action complaint, alleging that defendants Washington Mutual, Inc., Washington Mutual Bank and Washington Mutual Bank FSB (collectively, "WMB") mailed pre-qualifying notices to potential customers that do not constitute "firm offer[s] of credit," in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681m et seq. ("FCRA").  Plaintiffs filed an Amended Complaint on August 14, 2006 adding an additional claim for violation of the New York Fair Credit Reporting Act 380 NY Gen Bus § 380-m and 380-l ("NYFCRA").

Specifically, in the Amended Complaint, plaintiff alleges that defendant violated § 1681b and § 380-m and 380-l by certifying to a consumer reporting agency that it had "permissible purpose" to obtain and use plaintiff's "consumer report" because the mailing sent by WMB is not a "firm offer of credit," as defined by § 1681a.  Plaintiff further alleges that the above stated conduct was "willful" in violation of § 1681n and § 380-l and "negligent" in violation of § 380-m of the NYFCRA.  On September 20, 2006, defendants filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6), F.R. Civ. P. for failure to state a claim.

BACKGROUND

Plaintiff Shifra Gross asserts that WMB or its agents accessed plaintiff's consumer report without plaintiff's authorization, that plaintiff did not initiate any transactions related to that consumer report with WMB or its agents, that plaintiff did not authorize the consumer reporting agency from which WMB obtained the report to supply the consumer report to WMB, and that WMB obtained the consumer report without plaintiff's consent or knowledge.  Plaintiff claims that after WMB obtained the consumer report, it mailed plaintiff one of WMB's standardized written mailings for a home equity line of credit.  A copy of the mailer sent to plaintiff is attached to the Amended Complaint as Exhibit A (the "mailing").

The mailer states "You are Pre-Qualified for one of Washington Mutual's lowest interest rates on a home equity line of credit." The mailer provides, in relevant part,

> Being Pre-Qualified:  Congratulations—you were Pre-Qualified for a credit line up to the amount stated in this letter [$250,000] based on your credit history.  However, the amount of your line is limited based on the amount of equity you've built in your home.  If you'd like a different line amount, that request is subject to our internal credit policy guidelines.
>
> Securing our lowest rates: Our great low rate of 8.60% (Prime plus .85%) variable APR is available to our most creditworthy borrowers on lines of $20,000 to $250,000 with a loan-to-value of 80% or less.  If this isn't the right loan for you, we'll be happy to suggest other plans, though they may have higher rates.  Just give us a call for more information.
>
> Calculating your variable rate: Your variable rate (Prime plus .85%) is based on the Prime Rate, which you can find in *The Wall Street Journal*.

1

>As of 4/17/06, the Prime Rate is 7.75%, and the rate for fixed rate loans (with similar criteria for loans between $100,000-$250,000 and terms of up to five years) is 7.54% APR. Other loan terms are available, though they may have higher rates. Your rate will never be less than 3.75% or greater than 18%.
>
>Eligibility: To accept our offer your home must be a single-family, principal residence (co-ops and manufactured homes are ineligible). Also, your combined loan-to-value, including the amount of your new line, has to be 89.99% or less based on a property inspection or appraisal satisfactory to the Bank. Please not your line may be further limited by liens against your home.
>
>Closing requirements: At closing, we must have a first or second lien position in your principal single-family residence. We'll also need evidence of sufficient hazard insurance coverage (equal to the less of 100% guaranteed replacement coverage or the amount of this line any prior outstanding liens), and flood or other insurance based on the location of your home. We may also require title insurance.
>
>PRE-SCREEN & OPT-OUT-NOTICE: This "pre-screened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed if you do not meet our criteria, including providing acceptable property as collateral. If you do not want to receive pre-screened offers of credit from this and other companies, call the consumer reporting agencies toll-free, 1-8885OPT-OUT or 1-888-567-8688; or write: Equifax Options, P.O. Box 740123, Atlanta, GA 30374-0123 or Trans Union Corporation, Attention: Marketing, Opt Out, P.O. Box 97328, Jackson, MS 39288-7328.

Plaintiff claims that the mailing "has no value beyond a solicitation for business" because it only invites plaintiff to apply for a loan. According to plaintiff, it was not a "firm offer of credit" because it did not provide terms sufficient to make it an offer "capable of acceptance" by the consumer. Plaintiff contends that while the mailing indicates that WMB's interest rates are "as low as" 8.6 percent, it also states that interest rates range from 3.75 percent to 18 percent; thus, not stating the precise rate of interest to be charged. Plaintiff also asserts that while the mailing indicates a range of $20,000 to $250,000 for the amount of credit to be extended, it does not state the precise amount. Plaintiff argues that the absence of the amount of credit to be extended and the rate of interest to be charged prevent the mailing from constituting a firm offer of credit. Further, plaintiff argues that this kind of "prescreening" performed by "data brokers" or "information brokers" who accessed consumer report information for banks, like WMB, subjects consumers to an increased risk of improper disclosure of credit information and identity theft.

2

Plaintiff seeks an order enjoining WMB from obtaining consumer reports on individuals in connection with credit transactions not initiated by those individuals, and then failing to make a firm offer of credit to such individuals.  In addition, plaintiff seeks statutory damages pursuant to § 1681n.  Finally, plaintiff seeks civil damages under § 380-l and 380-m NYFCRA.

DISCUSSION

A. Legal Standards

The Court can grant a motion to dismiss a complaint pursuant to Rule 12(b)(6), F.R. Civ. P. only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[1]  In reviewing a motion to dismiss, the court must treat all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party.[2]  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[3]

When ruling on a motion to dismiss, the court must primarily consider the allegations contained in the complaint.  However, the complaint is deemed to include documents attached to the complaint, documents referenced in the complaint, and documents integral to the complaint.[4]  Because the mailing at issue here is attached as an exhibit to the complaint, the court may consider its terms in ruling on the motion to dismiss.

B. Defendants' Motion

1. Permissible Purpose Claim

Under the FCRA, consumer agencies are authorized to furnish consumer reports[5] only for certain "permissible purposes."  One such purpose is the use of the information "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to ... the consumer."[6]  If the credit transaction is not initiated by the consumer, the consumer agency is further restricted, and may issue a credit report only if, among other things, "the transaction consists of a firm

---

[1] Equal Employment Opportunity Comm. v. Staten Island Savings Bank, 207 F.3d 144, 148 (2d Cir. 2000) (quoting Conley v. Gibson, 335 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)) (quotation marks omitted).

[2] Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir.2000); Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999).

[3] Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation omitted).

[4] See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Rule 10(c), F.R. Civ. P.

[5] "The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-" 15 U.S.C. § 1681a(d)(1).

[6] 15 U.S.C. § 1681b(a)(3).

3

offer of credit ....”[7]  A "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based upon information in a consumer report on the consumer, to meet specific criteria used to select the consumer for the offer ...."[8]

However, the offer may be conditioned on three specific requirements: (1) the consumer being determined to "meet specific criteria bearing on [creditworthiness]"; (2) verification "that the consumer continues to meet specific criteria used to select the consumer for the offer"; and (3) the consumer's "furnishing any collateral that is a requirement for the extension of credit."[9]  In allowing consumer agencies to release information for the purpose of a firm offer of credit, Congress "balance[d] any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process."[10]  In addition, a "firm offer of credit" may require a consumer to furnish collateral as a condition of the offer so long as the collateral requirement is "disclosed to the consumer in the offer of credit ...."[11]

Plaintiff's contentions find no support within the text of the FCRA.  Plaintiff alleges that the mailing negates any offer WMB purports to make by the mailer's "lack of any terms, the highly conditional language throughout the mailing, and the actual negation of any offer." (Pl.'s Opp. Mot. to Dismiss at 10).  However, the FCRA expressly authorizes creditors to require recipients of "firm offers of credit" to submit an "application for the credit" in order for the creditor to be able to then "determin[e] whether to extend credit ... pursuant to the offer."[12]  Indeed, the Fifth Circuit has explained that the term "firm offer of credit" in the FCRA "really means a firm offer if you meet certain criteria."[13]  Moreover, under the FCRA, "disclosure of every single loan term [is not required] for an offer to be considered firm."[14]

The WMB mailer qualifies as a "firm offer of credit" because it is an "offer of credit ... to a consumer that will be honored if the consumer is determined, based upon information in a consumer report on the consumer, to meet specific criteria used to select the consumer for the offer ...."[15]  Plaintiff does not allege that WMB would have failed to offer her a home mortgage or home equity loan if she had in fact applied and if she were

---

[7] See 15 U.S.C. § 1681b(c)(1)(B)(i), § 1681b(f).
[8] 15 U.S.C. § 1681a(l).
[9] Id.
[10] See Cole v. U.S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) (citing S. Rep. No. 103-209, 13 (1993)).
[11] 15 U.S.C. § 1681a(l)(3).
[12] 15 U.S.C. § 1681 a(l)(1).
[13] Kennedy v. Chase Manhattan Bank United States, NA, 369 F.3d 833, 841 (5th Cir. 2004) (internal quotation marks omitted), cert. denied, 543 U.S. 995 (2004).
[14] Cavin v. Home Loan Center, Inc., No. 05 Civ. 4987, 2007 WL 92509, at *7 (N.D. Ill. Jan.10, 2007); see also Kennedy, 369 F.3d at 841 ("a firm offer of credit under the [FCRA] really means a 'firm offer if you meet certain criteria' "); Murray v. New Cingular Wireless Srvs., Inc., 432 F. Supp. 2d 788, 792 (N.D. Ill. 2006), appeal docketed, No. 06-2477 (7th Cir. 2006) ("the absence of an interest rate is not detrimental"); Putkowski v. Irwin Home Equity Corp., 423 F. Supp. 2d 1053, 1059 (N.D. Cal. 2006) (finding that an offer which states that the interest ranges from 5.65% to 24% but is "subject to change" and "may not be available" on an amount of credit between $15,000 and $300,000 constituted a "firm offer.").
[15] See 15 U.S.C. § 1681a(l).

then determined, based upon her financial data, to meet the relevant criteria. Additionally, the mailing directs consumers who do not wish to receive such offers or who are concerned about an increased risk of improper disclosure of credit information and identity theft, on how they can opt-out of receiving pre-screened offers in the future.

Finally, in regard to plaintiff's argument that the mailer has "no value," the "sufficient value" requirement established by the Seventh Circuit in Cole v. U.S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004) is not found in the FCRA.  Moreover, "[t]his Court ... is loathe to import a requirement into a statutory definition that was not placed there by Congress.  If Congress believes the statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in the privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute."[16]

Thus, after careful examination of the terms of the mailing to determine whether the offer was a guise for solicitation or sales pitch and has determined that the mailing by WMB is a legitimate credit product constituting a "firm offer of credit."

2. The New York Fair Credit Reporting Act

Plaintiff's second cause of action under NYFCRA § 380- l, which provides civil liability for willful noncompliance "in an amount equal to the sum of" any actual damages, punitive damages and, in certain cases, court costs and attorney's fees and § 380-m, which provides civil liability for noncompliance "in an amount equal to the sum of" any actual damages and, in appropriate cases, court costs and attorney's fees.  WMB argues that any state law claims arising out of defendant's alleged violation of 15 U.S.C. § 1681b must fail because the mailer, at issue, constituted a "firm offer of credit" and any such state law claims are preempted by §1681t(b)(1)(F) of the FCRA.

The FCRA contains two provisions that preempt state law claims, § 1681t(b)(1)[17] and § 1681h(e).[18]  Although no court in the Second Circuit has specifically addressed

---

[16] Nasca v. J.P. Morgan Chase Bank, N.A. et al., No. 06 Civ. 3471 (SHS), 2007 WL 678407, at *4 (S.D.N.Y. Mar. 5, 2007)(Stein, J.).

[17] Section 1681t(b)(1)(F), provides:

> No requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s-2, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply [to specific sections of the Massachusetts Annotated Laws and the California Civil Code]. 15 U.S.C. § 1681t(b)(1)(F).

[18]  Section 1681h(e), contains a second preemption provision whose language is more limited in scope and provides:

> (e) Limitation of liability. Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action for proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a

whether they preempt § 380-l and § 380-m of the NYFCRA, courts in this Circuit have held that § 1681t(b)(1) and § 1681h(e) preempt other state law claims involving disclosure of credit information.[19]   Section 1681h(e) permits certain actions where "malice or willful intent to injure [a] customer" is shown, while § 1681t(b)(1) (a result of a 1996 amendment to the FCRA) indicates a complete preemption of state law claims arising out of consumer disputes with "furnishers of information."[20]  As plaintiff's NYFCRA claim is completely devoid of allegations of malice or willful intent to injure plaintiff, the state law claim by plaintiff is preempted by the FCRA and, therefore, must be dismissed without leave to amend.

CONCLUSION

For the aforementioned reasons, defendant's motion to dismiss pursuant to Rule 12(b)(6), F.R. Civ. P is GRANTED in its entirety, and the complaint is dismissed with prejudice and costs are not awarded to either party.  Because the Amended Complaint is dismissed, the court does not address the plaintiff's argument with regard to injunctive relief.

**IT IS SO ORDERED.**

DATED:   New York, New York
         May 10, 2007

**ROBERT L. CARTER**
**U.S.D.J.**

---

consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such customer.

15 U.S.C. § 1681h(e).

[19] See, e.g., Prakash v. Homecomings Financial, No. 05 Civ. 2895 (JFB) (VVP), 2006 WL 2570900 (E.D.N.Y. Sep. 5, 2006) (Stein, J.); Fashakin v. Nextel Communication, No. 05 Civ. 3080 (SLT) (RER), 2006 WL 1875341 (E.D.N.Y. July 5, 2006).

[20] See, e.g., Kane v. Guaranty Residential Lending, Inc., No. 04 Civ. 4847 (ERK), 2005 WL 1153623, at *6-11 (E.D.N.Y. May 16, 2005) (comparing approaches of various districts).